IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| ANDRES FALCON and DONNA FALCON §<br>    Plaintiffs                               §<br>                                               §<br>VS.                                          §   CIVIL ACTION NO. 1:12-cv-491-LY<br>                                               §<br>STATE FARM LLOYDS                  §<br>    Defendant.                          §                                    JURY | |

**DEFENDANT STATE FARM LLOYDS' REPLY TO
PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO STRIKE
EXPERT TESTIMONY OF STEPHEN HADHAZI**

**TO THE HONORABLE JUDGE OF THIS COURT:**

COMES NOW State Farm Lloyds ("State Farm") Defendant herein, and files this Reply to Plaintiffs' Response to Defendant's Motion to Strike the Expert Testimony of Stephen Hadhazi, and in support thereof would respectfully show unto the Court as follows:

## I.  *DAUBERT* STANDARD

The objective of the *Daubert* requirements "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co. v, Carmichael,* 526 U.S. 137, 152 (U.S. 1999). Therefore, the Court must determine whether the proffered expert witness is really qualified to testify based on his knowledge, skill, experience, training, or education, and the Court should refuse to allow the witness to testify if he is not qualified in a particular field or on a given subject. *Wilson v. Woods,* 163 F.3d 395, 937 (5th Cir. 1999).  In addition the party proffering testimony, "must demonstrate that the expert's findings and conclusions are based on scientific method, and therefore, are reliable." *Moore v.*

*Ashland Chemical Inc.,* 151 F.3d 269, 276 (5th Cir. 1998).  "The expert's assurances that he has utilized generally accepted scientific methodology is insufficient." *Id.*  Finally, testimony that interprets the law or opines on ultimate legal issues is customarily excluded as unhelpful. *Owen v. Kerr-McGee Corp.,* 698 F.2d 236, 240 (5th Cir. 1983).

## II.   SUPPORTING EVIDENCE

In addition to the evidence previously produced with Defendant's Motion to Strike Expert Testimony of Stephen Hadhazi, Defendant relies on the following:

EXHIBIT A:   Additional Deposition Excerpts of Stephen Hadhazi

## III.   HADHAZI IS NOT A QUALIFIED EXPERT AND HIS OPINIONS AND TESTIMONY ARE INADMISSIBLE

**A. Hadhazi is not an expert witness on the extent to which smoke damage is covered by the insurance policy because he lacks the requisite qualifications and failed to use reliable facts, data, methodologies or principles in his work.**

Hadhazi is not an expert on the extent to which the State Farm insurance policy covers smoke damage, a fact he did not even attempt to testify about during his deposition.  Hadhazi was initially hired to simply do an estimate on the Falcon property back in the spring of 2012 and then asked to do some additional work in terms of testifying in this case. (Ex. 2[1], p. 30; 37).  Hadhazi has never been designated as a witness in federal court, but he believes has been designated as an expert related to insurance coverage, however he cannot recall how many times and cannot recall if he has ever testified in court regarding the same. (Ex. 2, pp. 17-18; 21).

Hadhazi's relevant expert experience for being an expert on insurance coverage appears to be the fact that he worked for Pilot Adjusting Service for 9 months in 2004 and that he is a public adjuster in Texas. (Ex. 2, pp. 110-116).  Hadhazi did not work any wildfire claims during his brief tenure with Pilot and has never estimated a wildfire

---

[1] Ex. 2 was produced in conjunction with Defendant's Original Motion to Strike Hadhazi.

case as a public adjuster. (Ex. 2, pp. 110-112; Ex. A, p. 163).  Instead, his entire wildfire "experience" comes from conducting between 50 and 100 wildfire damage estimates for Collins and possibly a couple of other plaintiff's attorneys whose names he cannot remember. (Ex. 2, pp. 31-32).  Plaintiffs' basic contention regarding why Hadhazi is qualified as an expert on insurance coverage appears to be that he wrote a bunch of estimates and therefore he is qualified as an expert on insurance coverage and interpreting policy terms.

Surprisingly, during his deposition when Hadhazi (an expert on insurance coverage) was asked to talk about all of his opinions, he failed to articulate the fact that he was an expert on insurance coverage and that smoke damage was clearly covered under the policy. (Ex. A, pp. 46-49).  This omission is even more striking when one realizes that the first expert opinion contained in "his" report is "Coverage for Smoke Damage" and that he spends one-third of "his" expert report addressing the same. (Ex. 1, pp. 2-7).  Actually, this is only surprising if one truly believes that Hadhazi wrote this part report on his own and was not spoon-fed large portions of the same by Collins and his associates. (Ex. A, pp. 46-49).

Hadhazi's advocacy is once again emphasized by numerous arguments contained in Plaintiff's Response.  Plaintiff's counsel tries to "support" his expert's opinions on insurance coverage by compiling additional data and testimony that Hadhazi had not even reviewed when he wrote his report.  For example, page 7 of the Response contains citations to testimony by State Farm adjuster Colemon to support Hadhazi's contentions that State Farm wrongfully denied coverage for smoke damage. Herein lies the basic problem with Hadhazi's alleged experience, facts, data, and methodology allegedly used to reach his opinions: Hadhazi never reviewed the deposition of Colemon prior to writing his report. (Ex. 2, pp. 16-17).  Plaintiffs have the

3

burden of proving that Hadhazi is an "expert" on insurance coverage, a burden they cannot meet in this case.

> **B. Hadhazi is not an expert witness on the type, extent, or cost of remediation needed to return the Falcon Residence to its pre-loss condition because he lacks the requisite qualifications and failed to use reliable facts, data, methodologies or principles in his work.**

First and foremost, one has to ask how Hadhazi can know what remediation is necessary to return a home to its "pre-loss condition" when he failed to determine what the "pre-loss condition" of the residence was. Hadhazi failed to make any effort to differentiate between damage caused by the Bastrop Wildfire and other potential sources. (Ex. 2, pp. 64-67). He does not know how long the Falcons owned the residence, when it was painted, when the carpet was installed, whether they have any pets, whether they smoke, or when the last time the HVAC was repaired. (Ex. 2, pp. 64-67). More troubling is the fact that Hadhazi testified that "in large part," the answers to these questions would not influence his damage estimate. (Ex. 2, pp. 66-67). Basically, Hadhazi's investigation of the pre-loss condition was:

> Q: Tell me what you asked Ms. Falcon about the condition of her property before the fire happened?
> A: Well, I mean, I asked her if it smelled prior to the event, and she'd indicated that it did not smell of that smoke prior to the event. The char and soot were not in the home prior to the event. I think that was a large part of our conversation.
> Q: Recall anything else?
> A. Not off the top of my head.

(Ex. 2, p. 63).

Hadhazi's expert analysis of damage is the house now smells of smoke and did not smell of smoke prior to the wildfire (even though some of the occupants smoked). The rigorous standards applied in Hadhazi's damage estimate, appear to be his ability to take measurements and plug the same into an estimate program that he created, while failing to document the damage with photos and failing to compile any evidence

of damage and include it with his report. Hadhazi's gathering of facts and data along with his application of methodologies and principals leave much to be desired.

> **C. Hadhazi is not an expert witness on bad faith or insurance code violations because he lacks the requisite qualifications and failed to use reliable facts, data, methodologies or principles in his work.**

Plaintiffs' claim that Hadhazi has substantial experience with the standards of good faith and fair dealing to which insurance claims adjusters are held, yet when questioned about the same during his deposition, his response was lacking:

> Q: …Mr. Hadhazi, let me ask you this, can you define for me what the duty of good faith is?
> A: Duty of good faith. Well, I mean, I think it's just to act – act appropriately towards an insured, you know, to kind of do unto them as you'd want them to do unto you, as it were. I mean just to – just to treat them honestly and fairly and to you know, just deal fairly with the insured after a loss.
> Q: Well, in your alleged capacity as an alleged expert for insurance bad faith and testified about that in connection with this case, can you give me an idea of what the statutory definition of bad faith is under Texas insurance code?
> A: I have the Texas insurance code here. I can look it up if you like. …
> Q: Well sir, I would like you to tell me, if you know.
> A: I couldn't recite it to you, specifically.
> Q: Can you tell me how the statutory duty of good faith under the Texas Insurance Code differs form the common law duty of good faith as an expert on insurance bad faith law?
> A: No, I couldn't.
> Q: Can you tell me – tell me, sir, why there is a duty of good faith?
> A: Well, I would assume that – you know, the state wouldn't want insurance companies mistreating people after a loss.
> Q: Okay, can you tell me how it evolved over time?
> A: No, no, I couldn't.
> Q: Can you tell me the – any Supreme Court decision helped to shape the duty of good faith in Texas?
> A: No, I couldn't.
> Q: Mr. Hadhazi, do you hold yourself out to plaintiff's lawyers to be available to testify about being a bad faith expert, is that part of your job services that you offer at Integra?
> A: No, it isn't.

(Ex. 2, p. 78-80).

This lack of relevant knowledge coupled with Hadhazi's failure to review any portion of the 513-page State Farm claim file, the ServiceMaster repair estimate, the depositions

5

of State Farm adjusters, or even the Falcon depositions clearly shows that his work in this case does not meet the standards for expert testimony in this field. (Ex. 2, pp. 16-17; 82-83).

                Respectfully submitted,

                WRIGHT & GREENHILL, P.C.
                221 West 6th Street, Suite 1800
                Austin, Texas  78701
                512/476-4600
                512/476-5382 (Fax)

By: _____
                Richard W. South
                State Bar No. 18863175

                ATTORNEYS FOR DEFENDANT
                STATE FARM LLOYDS

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing has been sent by certified mail to the counsel listed below, in accordance with the Federal Rules of Civil Procedure, on this 25th day of October 2013.

Mr. Robert L. Collins
P.O. Box 7726
Houston, Texas 77270-7726

_____
Richard W. South